[Civ. No. 13338.   First Dist., Div. One.   Sept. 4, 1947.]

EMIL A. HOHREITER, Appellant, v. MAYNARD GARRI-SON, as Insurance Commissioner, etc., Respondent.

U. S. Webb and Webb, Webb & Crites for Appellant.

Fred N. Howser, Attorney General, T. A. Westphal, Jr., and Harold B. Haas, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Prior to March of 1946, Emil A. Hohreiter was duly licensed by the Insurance Commissioner as a "life

agent," and as such entitled, among other things, to solicit disability insurance. On January 10, 1946, the Insurance Commissioner, by his deputy H. E. Wikstrom, filed an accusation against Hohreiter charging that in the solicitation and sale of four designated insurance policies he had misrepresented the benefits of the policies and had entered false answers in the applications, thus violating sections 781, 782, and 1731 (d), (e), (f) and (g) of the Insurance Code. The accusation sets forth in detail the nature of the charges, the names of the policyholders to whom the misrepresentations are alleged to have been made, all pertinent dates, the numbers of the policies issued, and in all respects fully complies with the law. (Gov. Code, § 11503.) In due course, Hohreiter requested a formal hearing to present his defense (Gov. Code, §§ 11505, 11506), the Insurance Commissioner determined that a hearing officer selected as provided in the administrative procedure act should hear the case alone (Gov. Code, § 11512), and Bradford Bosley was assigned as such hearing officer. A hearing and trial were duly had before Bosley on February 20, 1946, and on March 4, 1946, Bosley prepared and delivered to the Insurance Commissioner a "Proposed Decision," in which he found that the allegations of the accusation were true; that Hohreiter had engaged in acts in violation of certain sections of the Insurance Code; and recommended that Hohreiter's license be immediately revoked upon the adoption, which Bosley recommended, of the proposed decision by the Insurance Commissioner. On March 7, 1946, the Insurance Commissioner adopted *in toto* the proposed decision of Bosley including the portion recommending the immediate enforcement of the recommended penalty. It is admitted that in thus adopting the hearing officer's proposed decision the commissioner did not read or have available the record of the trial before Bosley, the transcript of such trial not having then been prepared. On March 26, 1946, Hohreiter filed a petition for reconsideration and rehearing, which was denied by the commissioner the next day, the letter of denial stating that the petition had not been considered on its merits and had not been submitted to the commissioner because the order provided that the decision should immediately become effective and, as the department interpreted section 11521(a) of the Government Code, under such circumstances it had no power to order a reconsideration or rehearing. Within the time permitted by law (Gov. Code, § 11523) Hohreiter filed a petition

for a writ of mandate in the superior court to secure a judicial review of the commissioner's ruling. Before that court he contended, and on this appeal he now urges, that the findings of the commissioner are unsupported by substantial evidence, that the judgment of the commissioner is arbitrary, capricious, unreasonable, and constitutes a gross abuse of discretion in various specified ways, that the commissioner decided the case without any knowledge of the facts, that such procedure violates the provisions of the Government Code, properly interpreted, and that if that code purports to permit such procedure it is unconstitutional under the due process clause.

A trial was had before the superior court. There was introduced into evidence the transcript of the Bosley hearing, and in addition, both sides produced and there was received into evidence additional and new evidence not presented to Bosley. The trial court, after finding in detail the historical facts, found that "as found by said hearing officer and by the Insurance Commissioner of the State of California, it is hereby found by this Court, exercising its independent judgment upon the evidence and law that each of the allegations of said accusation were true"; that it is true that Hohreiter has engaged in acts in violation of certain sections of the Insurance Code; "that a fair trial was given petitioner by the proceedings herein set forth. Respondent proceeded within its jurisdiction and there was no abuse of discretion by said respondent and the findings of said respondent . . . are supported by the weight of the evidence"; that in addition to the record of the Bosley hearing new and additional evidence was introduced by both sides; that "the Court has carefully weighed and considered both the evidence before the Commissioner and said new and additional evidence, and upon said consideration the Court additionally and in the exercise of an independent judgment expressly finds that it is true that petitioner here was guilty of acts" in violation of certain sections of the Insurance Code; that the decision and order revoking the license was "lawful, valid and within the jurisdiction of respondent." The court then finds that it is not true that the penalty is excessive or that the order is arbitrary, capricious, unreasonable or constituted an abuse of discretion, or that any constitutional rights of Hohreiter were adversely affected. The court, therefore, entered its judgment denying the application for the writ. From that judgment Hohreiter appeals.

▮ Appellant seriously urges that there was no substantial evidence to support the findings of the hearing officer, the

commissioner and the trial court. The contention is without merit. The evidence is ample and substantial to support the findings. The accusation contains six charges, and it has been found that all six charges are true. We are of the opinion that the evidence amply supports the findings that appellant violated the law as charged in all six counts, but it should be pointed out that if the evidence substantially supports any one of the six counts, the Insurance Commissioner was empowered, under section 1731 of the Insurance Code, to revoke the license, and this court would have no power to reverse the decision of the trial court. (*Rinker* v. *State Board of Medical Examiners*, 59 Cal.App.2d 222 [138 P.2d 403].)

All of the charges contained in the accusation relate to the solicitation and sale by appellant of a certain type of limited hospital benefit policy of the Westland Insurance Company to the several parties and on the dates set forth in the accusation. These parties are Frank and Florence Drouet, Allen E. Pelton, Merita E. Wieck and Etta P. Dallas. *Charge 1* alleged that appellant falsely misrepresented to Frank and Florence Drouet that the policy being solicited would pay for all hospital bills, including doctor bills and all other expenses that might arise from sickness or accident, while *Charge 2* alleged that in soliciting the Drouet policy appellant made false entries in the application concerning prior surgery undergone by Mrs. Drouet. *Charge 3* alleged that appellant misrepresented to Pelton that the policy would cover all hospital expenses arising from sickness or accident, while *Charge 4* alleged that in soliciting the Pelton policy appellant made a false entry in the application concerning Pelton's prior affliction with tuberculosis. *Charge 5* alleged that appellant misrepresented the terms and effect of the policy being solicited from Merita Wieck in that appellant told her that the policy would cover expenses incident to an existing hernia condition of her husband after such policy had been in effect for six months. *Charge 6* alleged that in connection with the policy solicited by appellant from Mrs. Dallas, appellant made a false entry on the application therefor concerning Mrs. Dallas' prior surgical treatment for a gallstone condition.

### The Evidence on Charges 1 and 2.

Frank Drouet testified at the Bosley hearing that appellant called at his (Drouet's) home, and solicited the policy in the presence of Drouet and his wife Florence; that appellant "told us how good it was and that we didn't have to worry

any more''—that ''the insurance company would pay for everything''; that when he discovered that the hospital coverage was only $5.00 per day he permitted the policy to lapse; that his wife told appellant that she had diabetes, but appellant said, ''That doesn't mean a thing. You look perfectly healthy''; that Florence Drouet had lost her ankle through surgery prior to the time of this interview, and that she had her crutches with her when appellant was in their living room with them; that Florence told appellant she had lost her foot, but appellant said ''it didn't make a particle of difference.'' They never told appellant to put the answer ''No'' to the application query ''Have you, or any member of the Family Group, listed above in question No. 3, ever had or been advised to have a surgical operation or hospital care?'' Drouet also said that he did not read the answers put upon the application by appellant, but ''we gave him the $7.50 and that is all.'' Florence Drouet did not testify before the hearing officer, although she had been subpoenaed. She was then unable to attend because of her physical condition. She did testify before the trial court. She said that when appellant was interviewing her husband and herself about taking out the policy she was sitting on her hospital bed, and that she had her crutches beside her; that when appellant was preparing to leave the house, she accompanied him to the door on her crutches. She also said that she had diabetes, but appellant said that ''I looked healthy enough, and he wouldn't have to ask me any questions''; that appellant did not ask her if she had had diabetes, and that she showed him her amputated foot—but ''He said it would be all right, that I could take out the insurance any time.''

In connection with the Drouet transaction appellant testified that he ''told them both about the hospital policy. I asked whether they were in good health or not, and then I went through the policy from one end to the other''; that he read each question on the application to Drouet, and that Drouet gave him the answers which he entered on such application, that he told Drouet that the policy only afforded coverage to the amount of $5.00 per day for 70 days. He further testified that when he visited the Drouet home he did not see Mrs. Drouet, and that Mr. Drouet made no mention of his wife's amputated foot; that even had he known of such amputation ''It would not harm the sale. I would put a rider on to cover anyone who had been injured.''

### EVIDENCE ON CHARGES 3 and 4.

Pelton testified that appellant solicited him at the front door of his home; that he did not clearly remember the conversation, but he "got the impression that the company would pay all the hospital bills that I or my wife might incur"; that he was "absolutely" certain that appellant did not tell him that the policy only allowed $5.00 per day, but he knew that it afforded no coverage other than hospital expenses. In explaining his belief about the extent of the coverage, Pelton said "I wouldn't altogether say I got it from him, but I got it from the radio. I was listening to the radio broadcast in which they asserted they would do thus and so, and when he came I was more or less under the impression that was the condition under which they were selling the policy. I wouldn't say definitely that he didn't say it, but I was under the impression they would pay more than $5.00." He also testified that appellant did not ask him if he or his wife (who was also covered under the "family group" provision) had ever had any prior illness or physical disability; that appellant had written "No" after most of the questions contained in the application, but that he (Pelton) did not read the application. Question 6 on the application refers, *inter alia,* to previous conditions of tuberculosis. Appellant entered "No" after that question. Pelton said that appellant never asked him if he had had tuberculosis, and that "I certainly would have told him if he had asked me"; that "three different times in my life I have had tuberculosis."

Appellant testified that Pelton made a study of the application; that he asked Pelton each question contained in the application, and that Pelton gave him the answers which were made to the questions. He did not remember telling Pelton that the policy would cover all hospital expenses.

### EVIDENCE ON CHARGE 5.

Merita Wieck testified that she asked appellant if the policy covered a case of an old injury or operation, and that she told appellant that her husband had had an "old injury"— a rupture, and that appellant told her that an "old injury" would be covered after "six or eight months"; although she was uncertain as to the exact time limit which appellant had expressed. She also testified that it was her impression that full hospital expense coverage was given.

Appellant testified that Mrs. Wieck fully read the application, and that he read all of the questions to her. He said that

she answered the questions, but that she made no mention of her husband's condition.

## EVIDENCE ON CHARGE 6.

Mrs. Dallas testified that in regard to question 6 on her application appellant made entry of the word "No," but that he did not ask her if she had ever had gall bladder trouble. She did not read the application to see if the answers were correct, but she had a prior medical history of gall bladder trouble. She said "If he had asked that I would have told him, but he didn't specify." Question 6 on the application sets out "gall bladder or kidney stones" as one of the included diseases concerning which medical history must be set out.

Appellant testified that he read question 6 to Mrs. Dallas, and that she supplied him with the "No" answer which he placed on the application form.

At the hearing on the mandate petition, appellant introduced the testimony of two former employers in the insurance business (Harry C. Smith and Robert R. Smith), with whom he had been associated for about 10 years. Each testified that they knew him to be honest and capable, and that no complaints against him had ever been brought to their attention.

Section 1731 of the Insurance Code provides in part as follows: "The commissioner may suspend or revoke any license of an insurance agent . . . if . . . he determines that any of the following facts exist in respect to any person authorized to act under such license: . . .

"(d) Such person has engaged in a fraudulent practice or conducts his business in a dishonest manner.

"(e) Such person has shown that he was incompetent or untrustworthy in the conduct of his business or has by commission of a wrongful act or practice in the course of his business exposed the public or those dealing with him to the danger of loss.

"(f) Such person has knowingly misrepresented the terms or effect of an insurance policy or contract while acting in the course of his business.

"(g) Such person has failed to perform a duty expressly enjoined upon him by a provision of this code, or has committed an act expressly forbidden by such a provision."

It is quite apparent that the findings under attack are supported by ample and substantial evidence, and that the record amply supports the action of the commissioner in revoking appellant's license. The record demonstrates that appellant

consistently misrepresented the extent of the hospital coverage, and deliberately and knowingly made false entries in the application blanks as to the physical condition of the applicants. Such tactics cannot be condoned and amply warranted the commissioner's order.

Appellant makes several complaints relating to the manner in which the accusation was filed and the proceeding handled. These require but brief consideration. The record shows that insurance department investigators solicited the facts (to which the policyholders subsequently testified) from the policyholders without any prior complaint from such policyholders. Just what relevancy this may have does not clearly appear. It would seem quite obvious that it is immaterial that the facts showing appellant's misdeeds were solicited rather than volunteered—the only important question is whether those facts were true.

Complaint is also made that a deputy commissioner filed the accusation in the name of the Insurance Commissioner without having personally interviewed the policyholders, upon the basis of a report of an investigator who had made such interviews, and then the same deputy acted as "prosecutor" before the hearing officer. Such procedure in no way invaded any of the legal rights of appellant. It is common practice for a district attorney to file an information against an accused based on facts secured by his investigators, and then to prosecute the accused in the trial court. No one could properly contend that such procedure invades the rights of the accused.

Appellant next complains that the commissioner, acting through his deputy, brought the accusation, and then, by adopting the findings and recommendations of the hearing officer, thus making them effective, acted as judge. Thus, says appellant, the commissioner acted as accuser and judge and by his decision won his own case. Such procedure is common before most administrative boards. While it is most important that the adjudicating process should be kept as impartial as possible, as will later appear, this appellant was accorded not one but two impartial trials. Moreover, it has never been held that simply because the administrative board both prefers and tries the charge that that fact alone invalidates the proceedings, renders the trial abortive, and deprives the accused of due process of law. It has been specifically held in this state that the mere fact that the administrative

board is both accuser and judge in no way adversely affects the legal rights of the accused. (*Berry* v. *Alderson,* 59 Cal. App. 729 [211 P. 836]; *Winning* v. *Board of Dental Examiners,* 114 Cal.App. 658 [300 P. 866].) While it is true that in both of the above cases the accusation was signed by an employee or agent of the board involved, while in the instant case it was filed by the commissioner through a deputy, that fact has no legal significance. An accusation by an agent of the board is just as much an accusation by the board as is a direct accusation by the board. Moreover, it is not contended that the hearing officer was acquainted with the charges or made any prejudgment of the case, and it was before him that the charges were actually tried. The commissioner merely adopted the findings of such hearing officer, as provided by law. (Gov. Code, § 11517.)

This leaves for consideration the most important contention of appellant, namely, that he was deprived of due process of law because the commissioner adopted the findings and proposed decision of the hearing officer, without reading or hearing the evidence produced before the hearing officer. It is urged that the commissioner ''decided'' the case, and that due process requires that ''he who decides must hear.'' This argument is predicated upon appellant's conceived effect of the so-called Morgan cases—*Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288], and 304 U.S. 1 [58 S.Ct. 773, 82 L.Ed. 1129].

This contention raises, apparently for the first time before an appellate court of this state, the question as to the constitutionality and interpretation of the Administrative Procedure Act of 1945, and particularly of section 11517 of the Government Code adopted in that year. This requires a brief reference to the history, background and purposes of the statutes in question.

As early as 1941, the Legislature of this state became aware of the need for reform in the administrative procedure field. In that year the Judicial Council, by legislative mandate, was directed to undertake a thorough investigation of administrative procedure and the judicial review of administrative determinations (Stats. 1941, ch. 1190, p. 2961), and to report back to the 1943 Legislature. Action was postponed by the council because of lack of funds (Ninth Report of the Judicial Council of California (1943) p. 5). The identical statute was

reenacted in 1943 (Stats. 1943, ch. 991, p. 2903), the council was directed to report its recommendations to the 1945 Legislature, and sufficient money appropriated to permit the council to carry out its functions. The council, through its staff and membership, with the assistance and cooperation of The State Bar, the attorney general and many other agencies, and with the help of many official investigations and reports carried on and made by other bodies, undertook the task assigned. (For a complete description of how the council operated, see "California's Approach to the Improvement of Administrative Procedure," by Ralph N. Kleps, Director, Administrative Agencies Survey of the Judicial Council of California, 32 Cal. L.Rev. 416; "Report on the Reform of Administrative Procedure" by Ralph N. Kleps, 20 Journal of The State Bar of California, p. 124; Tenth Report of the Judicial Council of California (December 31, 1944), p. 8 et seq.) In due course the council made its report to the Legislature suggesting various proposed legislative changes together with a full explanation of the purpose, intent, meaning and effect of the proposed statutory changes. (See Tenth Report, *supra*, p. 8 et seq.) The Legislature at the 1945 session adopted the proposals (Stats. 1945, chaps. 867 to 902) with only minor changes, and as to the section here involved with no changes at all. Among other things, the Legislature passed the Administrative Procedure Act by adding sections 11500 to 11528 to the Government Code.

One of the primary purposes of the Legislature in passing and of the council in proposing the legislation was to remedy the evils in connection with hearings before administrative boards frequently composed of laymen, untrained in procedure. To this end there was created the position of hearing officer. Such officer is a civil service employee and must be an experienced lawyer. All administrative hearings relating to the revocation of licenses by the agencies designated in the act must be conducted by these legally trained hearing officers (Gov. Code, § 11512(a)). The council was much concerned with the problem as to who should make the adjudication and how it should be made. Its first tentative proposal was to permit the person or body that heard the case, i. e., the hearing officer or the agency as the case might be, to decide the controversy (see Tenth Report, *supra*, p. 23), but the proposal later made and the one adopted by the Legislature is found in sections 11512(a) and 11517 of the Government Code.

Section 11512(a) provides: "The agency itself shall determine whether the hearing officer is to hear the case alone or whether the agency itself is to hear the case with the hearing officer." If the case is heard by the hearing officer and the agency, the agency decides the case with the assistance and advice of the hearing officer (Gov. Code, § 11517(a)). Subdivisions (b) and (c) of section 11517 provide the procedure where the hearing officer, as in the instant case, conducts the hearing alone. Those subdivisions provide: "(b) If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision.

"(c) If the proposed decision is not adopted as provided in subdivision (b) each party shall be furnished with a copy of the proposed decision. The agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same or another hearing officer to take additional evidence. If the case is so assigned to a hearing officer he shall prepare a proposed decision as provided in subdivision (b) upon the additional evidence and the transcript and other papers which are part of the record of the prior hearing. A copy of such proposed decision shall be furnished to each party. The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself no agency member may vote unless he heard the additional oral evidence."

It is the interpretation and constitutionality of these provisions with which we are now concerned. It is the thought of appellant that these provisions required the commissioner to read the record before he adopted or rejected the hearing officer's recommendations, and that if the sections do not so provide they are violative of the due process clause as interpreted in the Morgan cases, *supra*.

On the question of interpretation there can be no reasonable doubt that the council intended and the Legislature provided that, where the hearing officer alone hears the case;

the agency has the power of adjudicating, but in so deciding the case, if it is satisfied with the proposed decision of the hearing officer, it may adopt the decision of the hearing officer without first reading the record, but, if not satisfied with such decision, before a contrary decision may be rendered, it must give the parties a chance to argue and must read the record. In other words, in cases where the hearing officer sits alone, the administrative agency may, by adopting his proposed decision, in legal effect, and with statutory permission, delegate the power to decide to the hearing officer. But, if dissatisfied with such proposed opinion, the administrative agency may, in legal effect, grant a hearing and decide the case anew on the record and argument. That this was the intent of the Judicial Council is made crystal clear by the language used in its explanatory report. After first pointing out why its original tentative suggestions were changed the report continues: ''The proposals were modified considerably, therefore, with respect to the decision process. The Council's final recommendation . . . [as set forth in section 11517 of the Government Code] is substantially the 'recommended decision' procedure which is in current use. Present practice varies greatly, however, and there is a great difference in the extent to which the ultimate deciding authority becomes familiar with the facts involved in the cases which he purports to decide. *In fact, it is not realistic to require that the head of an agency or the agency members be thoroughly familiar with all of the cases which come before the agency.* Thus, the Council's proposal, which allows the agency itself to retain direct control over the adjudicating function, will nevertheless permit expeditious handling of routine cases where the agency finds no fault with the hearing officer's proposed decision. If the agency itself hears the case, it decides it. If a hearing officer alone hears the case he prepares a proposed decision in the form required for the final decision. The agency may adopt this proposed decision or it may reduce the penalty and adopt the balance. If the agency does not so adopt the proposed decision, it must furnish the parties with copies of the proposed decision and must allow them to argue either orally or by brief. It may then decide the case itself on the basis of the record before the hearing officer and the arguments. If new evidence is to be taken, the agency may hear it itself or it may assign the case to a hearing officer. He also prepares a proposed decision but this time the parties must

be given a chance to argue to the agency before the agency decides.

"*This procedure is in line with California case law which indicates that when an agency adopts the facts found and the award recommended by a referee who heard the evidence the agency need not review the record, but if different findings and award are made the record must be reviewed.* The result of the Council proposal is that, in fact, the decision is made in every case by someone familiar with the proceedings and before whom an opportunity to argue the case is afforded: the hearing officer if his decision is adopted; the agency itself if it does not adopt the proposed decision. But each decision carries the official sanction of the agency itself; and the agency becomes responsible for all decisions and is able by its close control and supervision over all decisions to adhere to a consistent policy." (Tenth Report, *supra,* p. 24; italics added.)

This report is a most valuable aid in ascertaining the meaning of the statute. While it is true that what we are interested in is the legislative intent as disclosed by the language of the section under consideration, the council drafted this language at the request of the Legislature, and in this respect was a special legislative committee. As part of its special report containing the proposed legislation it told the Legislature what it intended to provide by the language used. In the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report. (See many cases collected and commented on, 2 Sutherland on Statutory Construction, 3d ed., p. 491, § 5006, p. 498, § 5010; see, also, Crawford on Statutory Construction, p. 381, § 215.)

That the language used in section 11517 is not only susceptible of the interpretation that the agency need not read the record where it adopts the proposed decision of the hearing officer who alone hears the case, but that that is the most reasonable interpretation, is demonstrated by a comparison of the language used in subdivisions (b) and (c). Subdivision (b) provides that where the hearing officer alone hears the case he shall prepare a proposed decision and the agency "may adopt the proposed decision in its entirety, or may reduce the proposed penalty." Not one word in that subdivision requires the agency to know the record. But in subdivision (c) it is provided that if the agency does not want

to adopt the proposed decision each party must be furnished a copy, the parties must be given an opportunity to argue, and "the agency itself may decide the case upon the record, *including the transcript.*" The two subdivisions cannot possibly be reconciled unless the proposed interpretation is sound.

This procedure, leaving the adjudicating power in the agency, but not requiring the agency to know the record in all cases where an opportunity for a fair trial has been afforded before a hearing officer or referee is not new to California procedure. It has been expressly upheld in relation to the procedure adopted by the Industrial Accident Commission. There the commission alone has the power to adjudicate, but the cases are tried before a referee who makes a recommended decision. It is now settled that where the commission adopts the facts found and the award recommended by the referee who has heard the evidence, it need not review the record; but if the commission makes a different finding and award it must itself review the evidence. (*Taylor* v. *Industrial Acc. Com.,* 38 Cal.App.2d 75 [100 P.2d 511]; *Bethlehem Steel Co.* v. *Industrial Acc. Com.,* 42 Cal.App.2d 192 [108 P.2d 698]; *Helmick* v. *Industrial Acc. Com.,* 46 Cal.App.2d 651 [116 P.2d 658]; *California Shipbuilding Corp.* v. *Industrial Acc. Com.,* 64 Cal.App.2d 622 [149 P.2d 432]; cert. den. 324 U.S. 843 [65 S.Ct. 675, 89 L.Ed. 1405]; *California Shipbuilding Corp.* v. *Industrial Acc. Com.,* 27 Cal.2d 536 [165 P.2d 669]; *Pacific Indem. Co.* v. *Industrial Acc. Com.,* 28 Cal.2d 329 [170 P.2d 18].) That the council had in mind the rule of the Taylor case, *supra,* reaffirmed in the other cases cited, *supra,* is made clear by its report. On page 24, as above quoted, it stated that the procedure provided in section 11517 not requiring a reading of the record where the recommended decision was adopted was "in line with California case law" which so holds. On page 119 of its official report it discusses the cases upon which the proposed sections are based, discusses the Industrial Accident Commission rule, and cites the Taylor case.

While it is true that the powers and duties of a referee of the Industrial Accident Commission are somewhat different from those of a hearing officer, it is quite apparent that, insofar as the power of the administrative agency to adopt the hearing officer's recommended decision without reading the record is concerned, the Legislature intended to and did

adopt the Industrial Accident Commission procedure then existing and judicially approved.

We conclude this point with the holding that section 11517, properly interpreted, provides that where the hearing officer acts alone the agency may adopt his decision without reading or otherwise familiarizing itself with the record.

But, says appellant, if that be the interpretation of the section then it is unconstitutional under the rule of the Morgan cases. The first Morgan case (298 U.S. 468) involved a review of an order of the United States Secretary of Agriculture fixing certain maximum rates to be charged by market agencies for buying and selling livestock. Under the federal statute involved it was provided that the secretary, "after full hearing," could fix such rates. After such a rate had been fixed by the secretary, review proceedings were instituted in the district court. The complaint in that court alleged that the secretary assigned the duty of hearing to two acting secretaries, and that he thereafter made his order fixing the rates without having heard or read any of the evidence. The district court struck out these allegations. The Supreme Court held that these allegations disclosed that plaintiffs "have not been afforded the hearing which the statute requires," (p. 473), and concluded that the striking of these allegations was error. Note that there was no hearing officer clothed with statutory power to recommend a decision, and no statutory delegation of any power to the persons who heard the evidence. There was no indication that these persons had even prepared a report. The Supreme Court stated (p. 477): "Nor is it necessary to go beyond the terms of the statute in order to consider the constitutional requirement of due process as to notice and hearing," and then continued (p. 480): "A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence, it is frequently described as a proceeding of a quasi judicial character. The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his con-

clusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given.

"There is no basis for the contention that the authority conferred by § 310 of the Packers and Stockyards Act is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order. . . . It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusion which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

"This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. . . . But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them."

In the second Morgan case (304 U.S. 1), the court considered an appeal from a district court dismissal of the bill by which the review of the secretary's order was sought. The court stated that it was not concerned with the merits of the order, but considered again the contention that the secretary's order was made without the hearing required by the statute. The court held that the hearing was inadequate for essentially the same reasons discussed in the first case.

It is most difficult to tell from the Morgan cases whether they state a rule of due process applicable to all administra-

tive hearings, or whether they merely involve the interpretation of a particular statute. They apparently have been interpreted in this state as declaring a rule of due process. (See *Bandini Estate Co.* v. *Los Angeles*, 28 Cal.App.2d 224 [82 P.2d 185]; *Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353 [153 P.2d 746].) But they cannot be interpreted to mean that, where a fair trial is required by the statute before a fair and impartial hearing officer who is required by the statute to weigh and appraise the evidence and to prepare a proposed decision, the Legislature cannot provide that the administrative agency may adopt his proposed decision without reading the record. What the Supreme Court was interested in in those cases was in seeing to it that the administrative agency gave those adversely affected the right to a full and fair hearing. In the federal statute there involved there was no statutory officer clothed with statutory powers comparable to a hearing officer as provided in section 11517 of our Government Code. There was no provision at all for weighing the evidence, except by the secretary, and there was no indication that anyone except the secretary ever weighed the evidence. ■ Due process requires a fair trial before an impartial tribunal, and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded.

The Supreme Court of California has held recently in relation to the identical procedure set up for the Industrial Accident Commission that "There is nothing inconsistent in such procedure with the doctrine that 'he who decides must hear,' announced in *Morgan* v. *United States*. . . . The Supreme Court there pointed out (p. 479 of 298 U.S., p. 1294 of 80 L.Ed.) that 'The Assistant Secretary, who had heard, assumed no responsibility for the findings or order [as does the hearing officer or referee] and the Secretary, who had not heard, did assume that responsibility.' " (*California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 27 Cal.2d 536, 544 [165 P.2d 669].) That reasoning clearly distinguishes the rule of the Morgan cases.

■ There is another additional and cumulative reason why, in the instant case, due process was afforded appellant. We are here involved with an administrative agency exercising statewide jurisdiction. It now seems settled in this state that

the superior court in reviewing the actions of such agencies in revoking licenses in a mandamus proceeding must exercise an independent judgment on the facts (*Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304] ; *Sipper* v. *Urban*, 22 Cal.2d 138 [137 P.2d 435]). Thus, the ultimate power of decision rests with the trial court. That court decided this case upon the full record, including the transcript of proceedings had before the hearing officer, and in so doing, according to its express findings, exercised an "independent judgment" on the facts. Due process contemplates that somewhere along the line a fair trial be had—not that there be two or three fair trials. In any event, therefore, appellant having had a fair and impartial trial before a superior court, is in no position to contend he has not been afforded due process.

In conclusion on this point, it is our view that, to contend that the procedure under which appellant has been deprived of his license did not afford him due process, is to ignore the realities of the situation. Here appellant was tried before a trained hearing officer, an independent civil service employee not directly connected with the Insurance Commissioner. The hearing officer weighed the evidence and his recommendations were then submitted to the commissioner. The commissioner could have refused to follow them, but did not see fit to do so. Then appellant was afforded a complete hearing and trial before the superior court, and that court exercised an "independent judgment" on the facts. Appellant, in being given two complete trials, has been afforded more protection of his rights than is normally afforded a person accused of crime, who is legally entitled to but one trial.

The last contention of appellant is equally without merit. It is that because the commissioner saw fit to adopt the recommendation of the hearing officer it cut off his right to petition the commissioner for a rehearing, and that this was an abuse of discretion and invaded his legal rights. The procedure adopted by the commissioner was in exact accord with the statute. Section 11519 of the Government Code provides that normally decisions become effective 30 days after they are delivered or mailed "unless the agency itself orders that the decision shall become effective sooner." In reference to this provision the council has the following to say as to its intent: "In determining the question of when an agency decision should become effective the Council had to consider

conflicting policies. It is desirable to allow a period within which the agency can reconsider a case and correct its own errors, thus avoiding the necessity and expense of taking the matter to the courts. It would be improper, however, to make a decision effective during the period allowed for reconsideration if the respondent had no right to appeal to a court. It would be equally improper to allow respondent to have a choice between applying for reconsideration and court review during the same period because of the overlapping jurisdiction between the agency and the court. It is therefore provided that the decision will normally become effective 30 days after its delivery or mailing to respondent [§ 11519]. During this 30-day period reconsideration may be granted [§ 11521], and only after the decision becomes effective is a petition for review proper [§ 11523]. The second policy considered was the necessity of making some decisions effective immediately, or at least sooner than 30 days, in order to prevent a respondent from abusing his license privileges during the period following an adverse decision. To meet this situation it is provided that by special order the agency can shorten the 30 day period and make the decision effective sooner [§ 11519]. By this action the agency cuts down or eliminates the time for granting reconsideration, because the decision is subject to court review immediately after it becomes effective and no reconsideration can be ordered by the agency." (Tenth Report, *supra*, p. 25.) It is obvious that the section provides what the council says it intended to provide. There is no constitutional right to petition for rehearing, and by thus making it discretionary with the agency as to when the decision should become effective no constitutional rights of appellant were invaded. There was no abuse of discretion in this case in making the decision immediately effective.

The judgment appealed from is affirmed.

Bray, J., and Ogden, J. pro tem., concurred.