[Civ. No. 9328. Fourth Dist., Div. One. Jan. 9, 1970.]

AMY LOU FEIST, Plaintiff and Appellant, v.
R. ROGER ROWE, as Superintendent, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Ramon D. Asedo for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel, and Joseph Kase, Jr., Deputy County Counsel, for Defendants and Appellants.

**OPINION**

**WHELAN, J.**—Amy Lou Feist, petitioner, and R. Roger Rowe and the Board of Trustees of Rancho Santa Fe School District, defendants, appeal from a judgment granting a writ of mandamus commanding either a rehearing in the dismissal proceedings against petitioner as a probationary teacher or, in the alternative, reinstatement as a regular, full-time, certificated teacher. For the sake of clarity, Amy Lou Feist will be referred to as petitioner, the school superintendent as Rowe, and the Board of Trustees as Board, in discussing their respective contentions on appeal.

Pursuant to Education Code, section 13443, petitioner, with two other

probationary teachers, was given notice by Rowe on March 7, 1966, that her services would not be required for the ensuing school year.

Petitioner, a teacher of the fourth grade, made a request on March 15, 1966, for a hearing before Board in accordance with Education Code, section 13443.

A hearing commenced on April 14, 1966, at which it may be inferred charges against all three teachers were preliminarily dealt with. The hearing officer, John Willd, made various rulings concerning the form of the accusations and the notice of defense. The hearing as to petitioner only was continued until June 28, 1966. At that time, and at all times thereafter, the hearing officer was Alfred McGuire.

On June 28, 1966, before any witnesses were heard, petitioner made several preliminary motions. One of those was a request to take evidence and examine witnesses in order to show:

". . . that many of these particular charges that are charged against Mrs. Feist were selective and that it is common practice that occurs continually and has among many of the other teachers, and therefore it's a discriminatory application of them."

The hearing officer denied the motion on the basis that he did not want to hear witnesses at the preliminary law and motion stage of the hearing.

Immediately after the denial of the motion as to discrimination, petitioner's counsel moved to take the three Board members, David A. Burger, John C. Abels and Neil J. Randol, on *voir dire*. Counsel stated his reasons thus:

"I have evidence that the board, two members of the board at least, have prior to this hearing expressed opinions and made statements which would indicate that at least, if not biased or prejudiced, they have made a determination before hearing any of the evidence in this case, that they are predisposed to supporting the position of the superintendent in this case in his accusation, regardless of the evidence that comes forth in this case. I am prepared to present two affidavits in support of my position and, on that basis, I would ask that I be allowed to examine the board on voir dire."

The hearing officer refused to consider the question of prejudice because no affidavit had been filed.

Two declarations made under penalty of perjury were then presented, but were refused filing by the hearing officer because neither was the affidavit of a party.

The declarations had been made by Marianne Cantwell and Bettie

Carlton, and were based upon oral statements allegedly made by Randol and Burger, two members of Board, on April 27 and April 14 respectively. The April 14 statement made mention of three teachers, without specific mention of petitioner.

Despite the failure of the hearing officer and Board to pass upon the declarations intended to show disqualifying bias on the part of two members of Board, Board itself, during the course of the hearing on the evening of June 30, unanimously adopted a resolution that the hearing be carried on by the hearing officer, that he hear it to its completion, and that he submit a proposed decision. At that time the case in support of the accusation had not been rested; however, when the hearing resumed no other evidence in chief in support of the accusation was presented.

Petitioner did not object to that procedure at the time. The hearing continued and was concluded before the hearing officer alone.

The hearing was concluded on July 22, 1966, after which the hearing officer prepared a proposed decision which was adopted by Board on August 3, 1966, to be effective as of May 15, 1966.

After the findings of fact, the decision concluded with the statement:

"Cause exists under the provisions of Education Code Section 13443 relating solely to the welfare of the Rancho Santa Fe Elementary School and its pupils for a determination not to reemploy the certificated probationary employee, Amy Lou Feist, for the school year 1966-1967."

The superior court judgment was that a writ of mandate issue to Board that it set aside its adoption of the hearing officer's findings and recommendation and its notice of dismissal; that it determine whether it would conduct a new hearing of the charges, and should it determine to do so that the hearing commence within 60 days of the service of the writ; that if such new hearing were held, it be in accordance with certain directions of the court; that if no new hearing should be had, or, if held and should result in a decision to reemploy petitioner, the matter should be brought back for the purpose of having the court fix the amount of damages payable to petitioner.

The bases of the judgment were these:

The hearing officer improperly refused to consider or hear evidence as to the disqualifications of two Board members.

Board improperly withdrew from the hearing after the presentation of the evidence in support of the charges and prior to the presentation of petitioner's evidence.

Petitioner was improperly denied the right to present evidence of inten-

tional discrimination in the application of district policies to her; and in the event of a further hearing of the charges by Board, she should have that right and have a finding on the issues.

### QUESTION OF REHEARING PURSUANT TO WRIT OF MANDATE

A contention made by petitioner is that a rehearing of the grounds of the dismissal of March 1966 may not be had because Board's action on a rehearing could not meet the time limits of section 13443, Education Code.

That argument was accepted by the Court of Appeal in *Ward* v. *Fremont Unified Sch. Dist.* (Sept. 23, 1969) 276 Cal.App.2d 313 [80 Cal.Rptr. 815], a decision not available to either party here prior to submission.

The application of the rule laid down in that case is to place local school boards, alone of public employers, at the peril of being perfect in the procedural handling of dismissal hearings of probationary teachers, regardless of the soundness of the reasons for dismissal.

A side effect might be that unless in such proceedings there has been a denial of due process a decision by a school board to support the dismissal of a probationary teacher will not be vacated if any of the causes for dismissal found to be true "relates to the welfare of the school and its pupils."

### QUESTION OF DISCRIMINATION

■ There was mention of discrimination in the written notice of defense presented by petitioner, which contained the following:

"That respondent, AMY LOU FEIST, hereby presents new matter by way of defense, and alleges:

"a. That after May 27, 1965, when a dispute arose between complainant and respondent about the reevaluation of credits and years experience under the 1965-66 salary schedule, complainant discriminated against her in the application of district policies, failing to furnish her the necessary supplies and equipment for her classroom, failing to provide her needed assistance for emotionally disturbed children in her classroom, evaluating her as a teacher, requiring her to tutor during periods set aside for material preparation, changing her classroom schedule so as to deny her the usual free time, failing to provide her with requested student records; the foregoing services were afforded other teachers and denied her, thereby she was denied due process and equal protection under the law.

"b. That since the commencement of the 1965-66 school year, complainant has attempted to alienate respondent from the rest of the staff, the governing board and parents, criticizing and rebuking her in front of her pupils, other staff members and parents, and by displaying a contemptuous and negative attitude towards her.

"c. That since May 27, 1965, complainant has refused to respond to any correspondence of respondent directed to him regarding evaluation as a teacher, conferences regarding certain aspects of her teaching program, or problems she felt existed within the district."

On the strength of the quoted paragraph "a," petitioner's counsel stated he wished to call witnesses in advance of the presentation of evidence in support of the accusations.

In her amended petition for writ of mandate, petitioner alleged that a fair hearing was denied for the following among other reasons:

"That the board, at the outset of the hearing, and thereafter during the course of the hearing by the board or the hearing officer, refused to hear evidence of discrimination against petitioner in the enforcement of statutes or district policies."

Rowe challenges the trial court's finding that the issue of intentional discrimination was raised "during the course of the hearing" or at any other time than during the preliminary discussions, when petitioner wished to call witnesses on the question prior to any evidence in support of the charges. Rowe argues there is no evidence in the record to support that finding.

We agree that so far as the record shows the matter was bruited only when counsel stated he wished at that time to call witnesses on the subject. We agree also that the hearing officer's ruling at that stage was proper.

It is necessary to consider what is meant by the following language found in *United Insurance Co.* v. *Maloney,* 127 Cal.App.2d 155, 157-158 [273 P.2d 579]: "A charge of unconstitutional action goes to the very jurisdiction of the administrative officer or body to entertain the proceeding and hence is a matter which he or it must consider and decide at the outset of the proceeding."

When the agency bringing the charges is also the agency that conducts the hearing and decides the issues, its right under the Constitution to hear and decide the issues may well depend upon whether the bringing of the charges was an arbitrary act constituting intentional discrimination against the person charged.

It is significant in this connection that the Supreme Court, in *Griggs*

v. *Board of Trustees,* 61 Cal.2d 93, 98 [37 Cal.Rptr. 194, 389 P.2d 722], said: "In an administrative proceeding, like the one here involved, the combination of adjudicating functions with prosecuting or investigating functions will ordinarily not constitute a denial of due process [citations], and an independent inquiry by a school board prior to a formal hearing is not inconsistent with its power to hold the formal hearing [citation]." The *Griggs* case was decided upon the law as it then existed, when under section 13443 the board gave notice of dismissal in advance of any hearing; the court said at page 97: "It is thus clear that, before there is any occasion for a public hearing, the board must make an ex parte determination that there is good cause for dismissal, and, in order to be able to make this decision, the board must have some knowledge of the facts. It may rely primarily on the recommendation of the superintendent . . . ." As the statutes now stand, the board in conducting a hearing no longer passes upon the propriety of its own prior action.

In the proceedings against petitioner the person bringing the charges was not a member of the board hearing the charges. The allegations of discrimination were not made against Board but against Rowe.

Proof of the new matter alleged against Rowe, if it amounted to arbitrary unconstitutional discrimination in the application of rules and regulations of the school district, could not logically be produced until there had been evidence as to the matters in which petitioner had violated such rules and regulations.

The very language of the affirmative matter pleaded in defense indicates that petitioner would seek to place upon Rowe the onus for any failure on her part to observe the district policy, and also for any possible bad relations she had with other members of the staff.

We think that is a different matter than intentional discrimination in the bringing of charges by an administrative agency that might disqualify it from hearing such charges.

It was within the discretion of the hearing officer to determine the order of proof if evidence as to discrimination should be offered. (*Ehrlich* v. *McConnell,* 214 Cal.App.2d 280, 287 [29 Cal.Rptr. 283].)

There was no denial of due process in denying petitioner's strategic move to fire the first gun by calling witnesses to show, if such was her intention, that other teachers had violated district policy before there had been any evidence of violations on her part. In such a context, evidence of derelictions on the part of others without there having been action taken against such teachers, might tend to show discrimination in an absolute

sense, but might also tend to weaken the effect of evidence of noncompliance by petitioner with district policy as grounds for dismissal.

The record is devoid of any evidence that it was sought at any other time to present evidence tending to show discrimination against petitioner. Because of such lack of evidence, the only finding must have been against the truth of the allegations of her defense and of her petition in the court below.

In *Ehrlich* v. *McConnell, supra,* 214 Cal.App.2d 280, 288, it is said: "The fact that respondent saw fit to proceed against one of several wrongdoers does not, standing alone, support a charge of unconstitutional discriminations. [Citation.] To sustain such a charge it would have been necessary to show that other violators not only had not been, but would not be, proceeded against; also that the failure to proceed against the others was not due to a mere laxity of enforcement or some other reason, but was arbitrary, purposeful and with the intent to discriminate against appellants. [Citations.]"

Counsel for the petitioner in the administrative hearing referred to the proceedings before the same school board against two other teachers being carried on concurrently.

### CHALLENGE TO THE TWO MEMBERS OF THE BOARD

█ The hearing officer was in error in holding that a request for the disqualification of an agency member may be based only upon an affidavit of a party to the proceeding.

The language of Government Code, section 11512, subdivision (c), makes it clear that there must be a showing of cause based upon facts, which might in some cases be known to a party to the proceeding only as hearsay.

It was error, therefore, to refuse to file the two declarations intended to show prejudice on the ground they were not made by a party.

Whether that error resulted in the denial of a fair hearing must be viewed in the light of the fact that all three of the Board members thereafter delegated the fact-finding and decision-making functions to the hearing officer.

Unless such delegation was permissible, the whole proceeding loses its legal basis; if it was permissible then the refusal of the hearing officer to receive the two declarations of prejudice has not resulted in a denial of a fair hearing. The petitioner obtained just what she sought, because the

third member of Board could not function alone; and the findings and proposed decision were not made by the members of Board.

The language "disqualification of any hearing officer or agency member," by bringing together the two different entities that may act as fact finder and preliminary decision maker, reasonably may be interpreted as being applicable to hearing officer and Board members in those functions.

However, the ultimate adjudication could only be made by Board acting as such. That power was something over which a ruling of the hearing officer could not have any effect. If section 11512, subdivision (c) is intended to strike at the root of Board's power to act, which we doubt, it nevertheless contains within itself the saving proviso that a Board member may not disqualify himself or be disqualified if such a disqualification would prevent the existence of a quorum.

The language of that proviso is as follows: "No agency member shall withdraw voluntarily or be subject to disqualification if his disqualification would prevent the existence of a quorum qualified to act in the particular case."

The rule has been mentioned without disapproval in a recent case. (*Barkin* v. *Board of Optometry,* 269 Cal.App.2d 714, 718-719 [75 Cal.Rptr. 337].) In the instant case only one of the two Board members challenged could have been disqualified while maintaining the two required for a quorum.

In any event all three members of Board subsequently withdrew. Therefore the refusal of the challenge could not have been prejudicial to petitioner in the hearing if in fact the withdrawal was proper under the circumstances.

We set forth later our reasons for holding that the withdrawal from the hearing of the Board members was permissible.

■ Petitioner sought from the hearing officer and was denied an opportunity to question the members of Board on *voir dire* as to their possible bias or prejudice. The trial court correctly held such *voir dire* examination was not provided for in the law and the refusal to permit it was justified.

The method for disqualification of a board member or hearing officer is by affidavit which may be by someone not available for cross-examination. Upon such an affidavit or affidavits, the board is to determine whether a member not voluntarily disqualifying himself is in fact disqualified. The board members are to decide concerning the question, and are not required to testify on the subject. There is no right to examine board members on *voir dire* as to possible disqualification.

### WITHDRAWAL BY MEMBERS OF THE BOARD FROM THE HEARING

■ The court's opinion on the subject is expressed in the following written conclusion of law:

"That under the provisions of Section 11512 of the Government Code, which authorizes the Governing Board to determine that the hearing will be conducted by the hearing officer or by the hearing officer sitting with the Governing Board, there is no authority in said Section for the Governing Board to hear evidence presented by Respondent, and thereafter withdraw and not hear the evidence presented by petitioner, and the withdrawal of the Governing Board in this manner constituted a denial of due process of law."

The court had found that the Board members withdrew after the presentation of Rowe's case and prior to the presentation of petitioner's evidence. The finding is true, although the record shows that when the Board members withdrew from the hearing Rowe's counsel had just stated he had some three hours more of testimony to present. The record in that respect does not support an inference that the Board members decided to withdraw because all of Rowe's evidence had been presented.

It may be granted that the action taken by Board of withdrawing from the hearing was unusual. But unless it ipso facto deprived the whole proceeding of validity, we may consider the surrounding circumstances as they appear from the record. One of those circumstances is a letter from petitioner, the full import of which appears only from a reading in its entirety. It was as follows:

June 22, 1966

"Board of Trustees

"Rancho Santa Fe School District

"Rancho Santa Fe, California

"Gentlemen:

"In line with my comments in my letters of March 15 and 17, 1966 to Dr. Randol that it is my desire, for the welfare of our District, to avoid further publicity and the necessity of the hearings in regard to my employment, and because I am concerned about the affect [*sic*] of the recall movement upon our community, I am presenting the following proposal to you. Because of time limitations, it is requested that you give it your urgent attention. Further, you should know that I have been in contact with Dr. Cecil Hardesty, County Superintendent of Schools, and he feels it is a reasonable solution to our immediate problem of hearings and recall.

"It is proposed as follows:

"(1) That you adopt a resolution asking that the California School Board Association, the California School Administrators Association, and the California Teachers Association each appoint a representative, and that the three man panel so composed conduct a study of any problems brought to their attention relating to our District, and report to you on or before your regular meeting in August on the tenth thereof.

"(2) That you request a continuance of the hearings on my matter, set for June 28, 1966, until after August 10th, which request for continuance I have asked my attorney, Mr. Ramon Asedo, to accept.

"(3) That the above mentioned three man panel include in its study of problems within the District the matter of my re-employment next year, and that you and I agree to abide by their recommendation in this regard.

"I would hope your acceptance of the above would satisfy those persons supporting the recall movement. If you so desired, I would consent to you adding the condition to my proposal that the recall petitions be withdrawn from the County Superintendent of Schools' office, and from circulation. I hope that our mutual concern for our District will persuade you to accept my proposal.

"Yours truly,
"Amy Lou Feist"

When that letter was written, Board had already decided to hear the case with the hearing officer. The letter presented a problem. The members were asked to surrender their duties and powers to a body unauthorized by law to perform that function; they already, it seems, faced a threat of recall proceedings, over the continuance of which it may be inferred petitioner asserted some power of control. Although they might refuse the request for the three-man arbitration and go forward with hearing the charges against petitioner, a decision whether in favor of or against her might be considered by others as the result of the implied threats of the letter.

If legally permissible, therefore, the action of the Board members was understandable even though taken after they had heard much of the evidence.

The trial court may have reasoned that the Board members, in determining whether to adopt the hearing officer's findings and proposed decision, were or might have been influenced by the testimony they had heard, which all came from Rowe's side, without their being acquainted with the evidence produced by petitioner, since it is apparent that no complete transcript had been prepared.

Such a contention was made in *Shakin* v. *Board of Medical Examiners,* 254 Cal.App.2d 102, 108, 110 [62 Cal.Rptr. 274, 23 A.L.R.3d 1398], the facts of which are somewhat different from those in the case at bench.

In *Shakin* the licensee appeared without counsel at a first hearing before the board in open session; after evidence was taken the licensee requested a continuance to obtain an attorney, then withdrew his request; the board voted to continue the matter and assign it to a hearing officer. At a second hearing before a hearing officer, stipulations were entered into as to certain facts that had been the subject of the testimony at the first hearing. The contention of the licensee was disposed of in the following language: "Appellant's contention that the Board held a 'hybrid hearing' not specifically sanctioned by section 11517 of the Government Code and thus violating the Administrative Procedure Act cannot be sustained. . . . [P. 108.]

". . . . . . . . . . . . . . .

"Appellant contends that the Board rendered its decision on ex parte evidence since it retained the memory of the officer's testimony introduced at the earlier hearing. The Board, however, adopted the hearing officer's proposed decision in its entirety; that decision rested completely upon the evidence adduced at the June 28 de novo hearing. The hearing officer was not present at the earlier hearing and no resort to ex parte evidence of any sort occurred, as the trial court properly found." (P. 110.)

In the case at bench the trial court interpreted section 11512 as requiring a binding choice by the agency whether it would be the trier of fact, from which there could thereafter be no departure.

The cited case of *Shakin* v. *Board of Medical Examiners, supra,* 254 Cal. App.2d 102, holds at least that the agency, after embarking on a hearing, may surrender the role of trier of fact to a hearing officer, provided the findings and recommendation of the latter are based wholly upon the evidence he has heard.

There is in that part of section 11512 dealing with the procedure to be followed when the board decides to hear the evidence this language: "(b) When the agency itself hears the case the hearing officer shall preside at the hearing, rule on the admission and exclusion of evidence, and advise the agency on matters of law; *the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the hearing officer.* When the hearing officer alone hears a case he shall exercise all powers relating to the conduct of the hearing." [Italics added.]

The manifest meaning of the underscored language is that that such dele-

gation occurs only after the agency has decided that it will hear the case with the hearing officer.

Section 11512 must be read in conjunction with section 11517 under the provisions of which it is clear that a final determination may be made partly upon evidence heard by the agency and partly upon evidence heard by a hearing officer alone. That occurs only when, under section 11517, subdivision (c), the agency does not adopt the proposed decision of the hearing officer, and decides to take additional evidence. In such case the agency must also examine the record including the transcript of evidence presented before the hearing officer.

In *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593], a 10-man board heard evidence in an eight-count accusation, after which the hearing was continued. Before the continued hearing date, five members of the board were replaced and a ninth count added to the accusation. The newly constituted board heard evidence on the new count and later gave its decision based upon findings that the allegations of the new count and of one of the original counts were true.

An affirmative vote of seven members of that ten-man board was required to take the action that was taken.

The court said: "Petitioner first contends that the trial court erred in not holding that as to count seven the board committed an abuse of discretion (see Code Civ. Proc., § 1094.5) in that it violated the provision of section 11517(a) of the Government Code to the effect that 'Where a contested case is heard before an agency itself, no member thereof who did not hear the evidence shall vote on the decision.' . . .

". . . . . . . . . . . . . .

"We conclude here that participation in a decision by a board member who has read and considered the evidence, or a transcript thereof, even though he was not physically present when the evidence was produced, does not violate the requirements of due process.

"We are of the view that the Legislature did not, by the provision of subsection (a) of section 11517 of the Government Code, relied upon by petitioner, intend to require auditory preception of all the evidence by each board member who votes. A contested case may be heard either before a hearing officer alone or before the agency *and* a hearing officer (Gov. Code, § 11512(a)). If the hearing is held before a hearing officer alone, the agency may adopt the officer's 'proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision' (Gov. Code, § 11517(b)), without reading the record (*Hohreiter* v. *Garrison* (1947) *supra,* 81 Cal.App.2d 384, 397 [184 P.2d 323]); or may adopt

a different decision 'upon the record, including the transcript, with or without taking additional evidence' (Gov. Code, § 11517(c)). It thus seems that the Legislature simply intends that an agency member who exercises his own independent judgment on the case, as distinguished from adopting a hearing officer's decision either in its entirety or with a reduced penalty, must be acquainted with the record but need not be physically present when the evidence is produced." (Pp. 244-246.)

Section 11517, Government Code, contains the following provision: "Where a contested case is heard before an agency itself, no member thereof who did not hear the evidence shall vote on the decision."

By virtue of that language the action of Board was invalid if, in the presentation of evidence in the absence of the Board members the case was still one being "heard before an agency itself," and if "the decision" referred to in the quoted language of the section refers to Board's action in adopting the proposed decision of the hearing officer.

There is discussion in *Strode* v. *Board of Medical Examiners,* 195 Cal. App.2d 291 [15 Cal.Rptr. 879], which is of interest with relation to the meaning of "decision" as used in section 11517: "Initially the board assigned the matter to a hearing officer alone; the board itself neither heard nor decided the case; its ultimate act was the adoption of the proposed decision as its own. [P. 294.]

". . . . . . . . . . . . . . . .

". . . Appellant interprets the words 'decide no case' in subdivision (c) to include the board's act of adopting the hearing officer's proposed decision as well as the act of the board of hearing and determining the issues where it decides the case itself. But it is clear from section 11517 that it is only when the agency itself hears the case, it decides it. See *Frost* v. *State Personnel Board,* 190 Cal.App.2d 1 [11 Cal.Rptr. 718], and the Tenth Biennial Report of the Judicial Council, part two, cited therein, relative to the adjudicative power under section 11517." (P. 296.)

In *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 393 [184 P.2d 323], the court stated: "[T]he most important contention of appellant [is] that he was deprived of due process of law because the commissioner adopted the findings and proposed decision of the hearing officer, without reading or hearing the evidence produced before the hearing officer. It is urged that the commissioner 'decided' the case, and that due process requires that 'he who decides must hear.' This argument is predicated upon appellant's conceived effect of the so-called Morgan cases—*Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288], and 304 U.S. 1 [58 S.Ct. 773, 82 L.Ed. 1129]."

Further on the court in *Hohreiter* said: "This procedure, leaving the ad-

judicating power in the agency, but not requiring the agency to know the record in all cases where an opportunity for a fair trial has been afforded before a hearing officer or referee is not new to California procedure. . . . [P. 398.]

"
. . . . . . . . . . . . . . .

". . . Due process requires a fair trial before an impartial tribunal, and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded.

"The Supreme Court of California has held recently in relation to the identical procedure set up for the Industrial Accident Commission that 'There is nothing inconsistent in such procedure with the doctrine that "he who decides must hear," announced in *Morgan* v. *United States*. . . .' " (P. 401.)

*Dami* v. *Department of Alcoholic Bev. Control,* 176 Cal.App.2d 144 [1 Cal.Rptr. 213], speaks of the adoption of the hearing officer's proposed decision as "the ultimate adjudication" (p. 147); and of the "proposed decision" and "the final one" (p. 154). (See also *Whitlow* v. *Board of Medical Examiners,* 248 Cal.App.2d 478, 489 [56 Cal.Rptr. 525]; *Stoumen* v. *Munro,* 219 Cal.App.2d 302, 313-314 [33 Cal.Rptr. 305]; *Chosick* v. *Reilly,* 125 Cal.App.2d 334, 336-337 [270 P.2d 547]; *Sinclair* v. *Baker,* 219 Cal.App.2d 817, 822-823 [33 Cal.Rptr. 522], dealing with proceedings under section 19582, Government Code, with provisions similar to section 11517; and *Fichera* v. *State Personnel Board,* 217 Cal.App.2d 613 [32 Cal. Rptr. 159], also dealing with section 19582.)

Where the agency itself hears all the evidence and adopts findings of fact that reflect its decision on contested issues of fact, and determines what action it will take as a result of its findings, it makes "the decision," a vote upon which may not be made by a member who did not hear the evidence.

In the case at bench there was no such vote by any member of Board. Following their withdrawal their only action was to adopt the proposed decision of the hearing officer. No member of Board voted on the decision, so that the sole question is whether their delegation of the power of decision was permissible at that stage of the proceeding.

It is possible to argue that since Board had elected to hear the case itself, the hearing officer would not have been giving to the evidence and the demeanor of the witnesses the close and careful attention demanded of a trier of fact.

Experience has shown that in court trials before a judge sitting with a

jury, there is sometimes a waiver of a jury in mid-trial. In such cases it is not considered that the judge has not been hearing and considering the evidence presented prior to the jury waiver.

The example is not given as bearing upon the right of the board members to withdraw. In a civil jury trial, a stipulated waiver of a jury in mid-trial is the act of the parties, not of the jury; while in the proceedings under consideration it is the Board, not the parties, that determines whether the trier of fact will also be the presiding officer who rules upon questions of law. Whether such a shifting of the function of fact-finder from one to another after a hearing has begun is outside the statutory framework so as to amount to a denial of a fair hearing and of due process does not depend upon the attitudes of the parties, even though the right to a hearing might be explicitly waived. There is no such explicit waiver in the record, which, however, indicates that the hearing proceeded before the hearing officer alone without protest or objection from petitioner.

We have concluded that the language of section 11512 permits a delegation by Board of all its functions of fact-finder and decision-maker even after its earlier intention to exercise such functions directly; and that no deprivation of fair hearing and due process necessarily results therefrom.

### LACK OF COMPLETE TRANSCRIPT

Petitioner contends that the trial court erred in finding as follows:

"That this Court is unable to determine, in the absence of the entire stenographic record of the hearing, whether error was committed in excluding (1) evidence of the reading program petitioner was providing, and (2) petitioner's competency as a teacher prior to September of 1964."

Petitioner's argument in support of the materiality of the evidence which she says was wrongly excluded is set forth in the following quotations from her opening brief: "[I]t could well be determined that a teacher was not providing the program required by the policies of the District or Superintendent, but that the program provided was equal to or better than what those policies required and the District would be harmed, rather than benefitted, by a decision not to reemploy. Stated otherwise, cause for dismissal can exist, but *Section 13443* can require the rehiring of the teacher because of her value to the District.

"... Only by allowing a teacher to present any evidence relating to her competency, and requiring the Board to hear that evidence, can a teacher be assured that all factors relating to her reemployment be before the Board, and can the Board determine if the cause for dismissal relates solely to the welfare of the schools and the pupils thereof."

To support her claim such evidence was excluded, she presented to the trial court two excerpts from the proceedings on July 21, 1966, in which testimony of John Berkson and Bettie Carlton was presented.

Berkson testified as to his acquaintance with work done by petitioner with two of his children prior to the 1964-1965 school year, which was stricken; he then testified that the same conditions prevailed during the two years immediately past with regard to another child in petitioner's class.

The testimony of Bettie Carlton was stricken after she had first said she had a child in petitioner's class in 1964-1965 but then admitted it had been in 1963-1964.

The hearing commenced on June 28 and continued on June 29 and 30; July 1, 21 and 22, 1966. Rowe's case in chief was rested on July 1 at the beginning of the session at 8:30 a.m.

The only testimony found in the partial transcript is that of John Berkson and Bettie Carlton. It may well be that the testimony presented was replete with evidence intended to show petitioner's competency during the school years 1964-1965 and 1965-1966. Without deciding whether petitioner's underlying argument is sound, it is wholly possible that the stricken testimony of Berkson and Mrs. Carlton might prove to have been insignificant beside a mass of testimony tending to show petitioner's competency in the two later years.

There is in fact in the record a group of communications addressed either to Rowe, to Board, or to individual Board members, of which one is from a pupil, 12 are from parents, and one is from a resident of the district, extolling petitioner's excellence of character and as a teacher. All were written after Rowe gave notice of dismissal.

The question, therefore, is whether a sufficient record was provided for the court to determine whether prejudicial error was committed. Petitioner had the duty to prepare the stenographic record of the trial court proceedings in order to obtain judicial review. (*Fickeisen* v. *Civil Service Com.* (1950) 98 Cal.App.2d 419, 421 [220 P.2d 605]; *Mattison* v. *City of Signal Hill* (1966) 241 Cal.App.2d 576, 582 [50 Cal.Rptr. 682].) The cost of furnishing the transcript is to be paid by the person seeking review. (Gov. Code, § 11523.)

■ The decision of an administrative agency comes before a court with a presumption of regularly performed official duty; any challenge to the sufficiency of the evidence in such prior hearing, where no stenographic record of the proceeding is attached or filed with the petition, is a conclusion that cannot be treated as equivalent to the indispensable facts. (*Black* v. *State Personnel Board* (1955) 136 Cal.App.2d 904, 909 [289 P.2d 863].)

■ The same may be said of the action of the hearing officer in excluding from evidence certain documents marked for identification "I" through "L." The trial court found itself unable to pass upon the propriety of that action because of the lack of a complete transcript. Nothing in the record shows at what point or under what circumstances the writings were offered. In general they seem to be brief outlines of lectures or of seminars, or other material dealing with reading or the teaching of reading. They are not self-proving; they require explanation, if not as to their meaning, as to the purpose for which they were offered. Under those circumstances, the trial court rightly concluded that it could not be determined from the record whether there was error.

### REFUSAL TO ISSUE SUBPOENA DUCES TECUM

■ On June 29, petitioner sought the issuance of a subpoena duces tecum for evaluations of other teachers in the school, records of psychological evaluations of the children in petitioner's classes and other material. The trial court made this finding:

"That the Governing Board refused to issue a subpoena duces tecum under the provisions of Section 10751 of the Education Code requesting the production of test results of petitioner's pupils, and other documents relating to her competency."

The trial court then concluded:

"That petitioner sought by judicial process to have certain records produced by a subpoena duces tecum under the provisions of Section 10751 of the Education Code and if the sole grounds for refusal to issue such subpoena was the requirement that pupil records be kept confidential, the refusal to issue the subpoena duces tecum constituted prejudicial error."

Again, petitioner has presented a transcript only of the conversations that occurred at the time the subpoenas were first requested.

At that time the hearing officer refused the request in part; firstly because of the tardiness of the application, secondly because of the insufficiency of the showing made as to materiality of some of what was sought to be produced.

The purpose of the psychological tests of the children was to show some of petitioner's problems were created by the psychological make-up of the children in her class.

Among the material ordered to be produced, and which Rowe's counsel said would be produced, were "anything that contains a specific date that relates to Mrs. Feist, any letters that relate only to her, if you can furnish

the dates of them," "sign-in sheets for teachers after September 1, 1964 . . . if they can be produced without causing a recess in this hearing," and the daily notes of the superintendent if there should be other ones not yet produced.

The hearing officer denied the production of "the evaluation of other teachers . . . without more showing," tests of the students of other teachers, and "the psychological and other tests of children assigned to Mrs. Feist, without a better showing as to why they should be produced, without violating Section 10751 of the Education Code." Considerable discussion then was had about alternatives. The hearing officer offered petitioner an opportunity to submit further authority for the production of the records.

The trial court had made a general finding that covered the situation:

"The remaining issues raised by petitioner in her petition, or in her designation of matters presented for review, in the absence of the entire stenographic record, cannot be determined at this stage of the proceedings. . . . The court expressly refrains from making any finding in regard to those issues."

It was the burden of petitioner to show error. The complete transcript is not available for examination to determine what was or was not offered, introduced or made available during the further course of the hearing or to determine if there was prejudice.

Government Code, section 11510, subdivision (a), provides: "Before the hearing has commenced the agency, or the assigned hearing officer, shall issue subpoenas and subpoenas duces tecum at the request of any party for attendance or production of documents at the hearing. Compliance with the provisions of Section 1985 of the Code of Civil Procedure shall be a condition precedent to the issuance of a subpoena duces tecum. After the hearing has commenced the agency itself hearing a case or a hearing officer sitting alone may issue subpoenas and subpoenas duces tecum." The section has been interpreted to give the hearing officer, in deciding whether to issue a subpoena duces tecum not asked for before the hearing, discretion to pass upon the materiality of the material sought to be produced. (*National Automobile etc. Co.* v. *Garrison,* 76 Cal.App.2d 415, 417 [173 P.2d 67].)

Upon the record before us, which was before the trial court, it cannot be said that the hearing officer was ultimately in error.

### SUFFICIENCY OF THE FINDINGS TO SUPPORT DISMISSAL OF PROBATIONARY TEACHER

Petitioner insists that one of the findings of the hearing officer is insufficient as a ground for her dismissal.

She also attacks the trial court's finding that the language of some of the charges was not too vague and indefinite and that consequently it was not error for the hearing officer to refuse to strike the charges.

She attacks also the trial court's holding that the written statement of district policy, violations of which were charged, was not too vague and indefinite to make compliance with them impossible.

On the other hand, Rowe attacks the trial court's holding that certain findings of the hearing officer grouped under paragraph headings VII and VIII do not constitute a sufficient cause for dismissal, and that they do not relate solely to the welfare of the district and pupils thereof, as required by Education Code, section 13443; and that the charges of the accusation upon which such findings are based do not constitute a cause for dismissal, and do not relate solely to the welfare of the district and the pupils thereof.

The objections of petitioner, based upon a claim of vagueness and indefiniteness in the charges and findings, do not go to the findings and the charges on which they are based we mention hereafter, which are objected to only as being unsupported by sufficient evidence. Among them are those grouped under paragraphs VII and VIII.

Among the matters found true not grouped under paragraphs VII and VIII are violations of district policy previously communicated to petitioner in leaving her class unattended on four specific instances; in failing to have the class ready according to a prearranged schedule for the music specialist on several occasions; and in failing to return to the classroom to relieve the specialist at the expiration of the music period, making it necessary for the specialist to complain to Rowe; in failing to maintain adequate classroom control and discipline so that after the matter had been called to her attention on many occasions by Rowe on five subsequent occasions Rowe was required to impose order and discipline; in failing to be present at the school 30 minutes prior to the start of classes and in failing to remain at the school until 30 minutes after the dismissal of the last class of the day 60 to 70 times during the school year 1964-1965,[1] and in the school year 1965-1966 a somewhat less number of times; in failing on two specific occasions to notify the school office where she might be found during periods set for conferences with staff members and parents.

Grouped under paragraph VII were findings that petitioner failed to maintain good relations with the staff and Rowe, as instanced by her refusal to return her contract to the secretary to enable the secretary to obtain certain information, and by refusing to discuss the matter with the superintendent and walking away from him; by her statement to another teacher

---

[1] The policy for 1964-1965 had been set by the State Board of Education and communicated by Rowe to petitioner.

that, according to a Mrs. Meyers, Rowe had requested another staff member to resign as N.I.A.N. representative, followed by petitioner's denial to Rowe and Mrs. Meyers that petitioner had made such statement; and in refusing to see Rowe at his request concerning her proposed absence in response to a subpoena served upon her.

Grouped under paragraph VIII were several findings of which two found petitioner failed to commence tutoring of a child at the time directed by Rowe; and that she failed to inform the reading specialist until the Friday afternoon preceding of a conference with parents scheduled by petitioner for November 21, 1965, so that the reading specialist was unable to be present, although petitioner had been requested on November 10 to set up a schedule of conferences and to give timely notice thereof to the reading specialist.

■ The scope of judicial review for cases of this type was established in *Griggs* v. *Board of Trustees, supra,* 61 Cal.2d 93, 96 [37 Cal.Rptr. 194, 389 P.2d 722]. There the court held that where there is evidence to support the board's findings of fact and where the cause for dismissal found by the board can reasonably be said to relate to the welfare of the schools and the pupils thereof, the reviewing court may not consider whether the facts found are sufficiently serious to justify dismissal.

■ Because of the limited transcript that was before the trial court and is before this court, little evidence as to the causes for dismissal is available.

We must assume the evidence to support the quoted findings was sufficient.

It is not material that any single one of the facts found was not alone a sufficient cause for dismissal. The cited findings as a whole afford a reasonable basis for Board's determination that such facts related solely to the welfare of the school and its pupils.

The following language is found in *Board of Education* v. *Swan,* 41 Cal. 2d 546, 552 [261 P.2d 261]: " 'An important part of the education of any child is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept. The example of a teacher who is continually insubordinate and who refuses to recognize constituted authority may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn. Such conduct may unfit a teacher for service in a school even though her other qualifications may be sufficient. "Book learning" is only a phase of the important lessons a child should learn in a school.' "

We conclude the decision of Board should have been sustained.

The judgment that a writ of mandate issue is reversed and the trial court

directed to enter judgment in favor of Rowe and Board on the first cause of action of petitioner's complaint.

Rowe and Board shall recover costs on appeal.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied January 23, 1970, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied March 4, 1970.